IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Kendra James-Smith, etc., | Case No. 3:10 CV 2640 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Total Affiliates Accidental Death and Dismemberment Insurance Plan, et al., | |
| Defendants. | |

### INTRODUCTION

"Nothing is certain," Benjamin Franklin famously wrote, "except death and taxes."  This case is about the foreseeability of death and the contracts made to benefit from it.  Specifically, before this Court is Plaintiff Kendra James-Smith's Motion for Summary Judgment (Doc. No. 14), and Defendants' Motion for Judgment on the Administrative Record (Doc. No. 15).  This Court treats these as cross motions for judgment on the administrative record.  Plaintiff is the named beneficiary under a group accidental death plan ("Plan") provided by Life Insurance Company of North America ("LINA").  Plaintiff is the beneficiary under the Plan (Doc. No. 13 at 2).  Defendants are the sponsors and administrators of the Plan.  This Court has jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA").  28 U.S.C. §§ 1001 et seq.

### BACKGROUND

In June 2008, Paul Smith, husband of Plaintiff, was northbound on his motorcycle, with passenger Monica Ohlemacher, on State Route 4 in Erie County, Ohio.  A southbound vehicle made a lefthand turn onto Bogart Road in front of Smith just as he was entering the intersection.  The driver of the turning vehicle, Larry McCready, never saw the motorcycle (Doc. No. 20-2 at 13).  A horrific

collision resulted, ejecting both occupants of the motorcycle (Doc. No. 20-2 at 11).  Ohlemacher was severely injured, and Smith did not survive (Doc. No. 20-2 at 8).  The cause of death listed on the coroner's report was "massive head and chest injuries," and the manner of death as "accident" (Doc. No. 20-1 at 44).

A witness, traveling south on State Route 4 as Smith passed by, estimated that Smith accelerated to 70 mph as he approached the intersection (Doc. No. 20-2 at 7), where the posted speed was 55 mph (Doc. No. 20-2 at 2).  The witness saw Smith swerve to avoid the collision but did not brake (Doc. No. 20-2 at 17–18).  At the time of the accident, Smith's blood alcohol content ("BAC") was .09% (Doc. No. 13 at 2).  The legal BAC in Ohio is .08% (Doc. No. 13 at 2).

The Ohio State Highway Patrol noted Smith was not wearing a helmet, found no signs of braking, and listed the cause of the crash as McCready's failure to yield (Doc. No. 20-2 at 2, 11).  A further investigation, to determine the speed of Smith's motorcycle at the time of the accident, is not included in the record.  Nearly four months after the accident, Trooper Anthony Scherley, one of the first at the scene, told a claims specialist for Defendants that Smith's BAC of .09% "definitely was [a factor] as it would have slowed down his reaction time" (Doc. No. 20-1 at 22).  The record includes no other opinions regarding the cause of the crash.

Under the terms of the Plan, a "Covered Accident" is defined as "A sudden, *unforeseeable*, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss . . . *not otherwise excluded* under the terms of this Policy." (Doc. No. 20-1 at 16) (emphasis added).  The Plan's Common Exclusion ("alcohol exclusion" or "exclusion") states:

2

> [B]enefits will not be paid for any Covered Injury . . . which, directly or indirectly, *in whole or in part*, is caused by or results from . . . operating any type of vehicle under the influence of alcohol . . . . Under the influence of alcohol, for the purposes of this exclusion, means intoxicated, as defined by the law of the state in which the covered Accident occurred."
> (Doc. No. 20-1 at 17) (emphasis added).

Plaintiff's application for death benefits under the Plan was denied (Doc. No. 20-1 at 16). Plaintiff appealed and was again denied death benefits (Doc. No. 20-1 at 4). Each denial was based on two independent grounds: (1) Smith's death is not a Covered Accident because it was foreseeable in light of his intoxication, and (2) Smith's death falls under the alcohol exclusion because his intoxication "directly or indirectly, in whole or in part" caused his death (Doc. No. 20-1 at 6, 18). This lawsuit followed (Doc. No. 1).

## STANDARD OF REVIEW

In reviewing a denial of benefits by a plan administrator under 29 U.S.C. § 1132(a)(1)(B), a district court must "conduct its review based solely upon the administrative record." *Cooper v. Life Ins. Co. of North America*, 486 F.3d 157, 171 (6th Cir. 2007) (quoting *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998)) (internal quotation marks omitted). Under this standard, the court considers "only the facts known to the plan administrator at the time he made his decision." *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir.1996)) (internal quotation marks omitted). The court may not consider evidence beyond the administrative record unless it "is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id.* (quoting *Wilkins*, 150 F.3d at 619) (internal quotation marks omitted). No such challenge is made here. This Court therefore considers only the evidence in the administrative record.

3

The court ordinarily reviews the administrator's decision using "a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, if a plan vests such discretion in the administrator, the court reviews its decisions under the arbitrary and capricious standard. *See Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998) (citation omitted). The parties agree this latter standard applies (Doc. No. 14 at 6; Doc. No. 15-1 at 6). This standard is highly deferential and is "the least demanding form of judicial review of administrative action . . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Abbott v. Pipefitters Local Union No. 522*, 94 F.3d 236, 240 (6th Cir. 1996) (citation omitted); *see also Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (quoting *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003)).

Another way of stating the standard of review that guides this Court is whether the plan administrator's decision was reasonable. "A decision is not arbitrary and capricious if it is based on a reasonable interpretation of the plan." *Shelby County Health Care Corp. v. Southern Council of Indus. Workers*, 203 F.3d 926, 933 (6th Cir. 2000) (citing *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1574 (6th Cir. 1992)). "The district court must affirm an employer's or insurer's decision if evidence in the record reflects any reasonable explanation for the decision." *Clark v. Lennox Indus., Inc.*, 1994 WL 445222, at *1 (6th Cir. 1994) (citing *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693–94 (6th Cir. 1989)). The court "must decide whether the administrator's decision was rational in light of the plan's provisions." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (internal quotation marks omitted). Applying this standard, the court "interpret[s] the provisions

4

according to their plain meaning in an ordinary and popular sense." *Id.* at 711 (citing *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998)).

## ANALYSIS

Plaintiff challenges both findings made by the Administrator: namely, Smith's death is not a Covered Accident because it was foreseeable and, even if unforeseeable, is not a Covered Accident because of the alcohol exclusion in the Plan. To prevail, Plaintiff must show that both of these findings are arbitrary and capricious. Conversely, because these are separate grounds for denying benefits, Defendants need only successfully defend one of the grounds to uphold the denial of benefits.

**Foreseeability**

Defendants denied benefits because Smith's death was a foreseeable result of his actions, chiefly "operating his vehicle while under the influence" (Doc. No. 20-1 at 18). Was this accident, where McCready failed to yield, foreseeable? Defendants' argue:

> Since it is foreseeable that speeding and operating a vehicle while having a blood alcohol level over the legal limit in the state of Ohio *could result* in serious bodily injury or death, we have determined that Mr. Smith's death would not be considered a Covered Accident as defined by this policy.
> (Doc. No. 20-1 at 6) (emphasis added).

This Court disagrees. The "could result" standard is so broad that it is no standard at all. It easily may be used to deny benefits arbitrarily in numerous situations where the reasonable person would expect coverage. For example, death and various forms of dismemberment "could result," regardless of intoxication, when you speed, when you run a stop sign, when you change lanes without signaling, when you use your cell phone or text while driving, or when you drive while drowsy or distracted. Some of those activities, statistically, carry even greater risk than driving while

5

intoxicated. *See Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 335–36 (6th Cir. 2009) (citing a study finding texting reduces reaction times three times more than drinking alcohol).

The "could result" standard also violates ERISA's plain meaning requirement. *See Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). Benefit plans must be "written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a). Beneficiaries "should not have to consult a long line of case law or law review articles and treatises to determine the coverage he or she is purchasing under an insurance policy." *Kovach*, 587 F.3d 332–33. If nearly every type of negligent behavior involves some foreseeable amount of risk, what is a Covered Accident? Applying the "could result" standard, a policyholder has no way of knowing.

In this Circuit, the degree of intoxication is a relevant consideration in determining whether the collision was foreseeable. *See id.* at 331. In *Lennon v. Metropolitan Life Ins. Co.*, a case Defendants rely upon, the court held that a driver with a BAC of 0.321% was "extremely drunk" and denying benefits due to intoxication was not arbitrary and capricious where the "car flew off the road," there was no "alternative explanation for the death," and the driver went the "wrong way down the street . . . ." 504 F.3d 617, 622–23 (6th Cir. 2007). Distinguishing the extreme circumstances in *Lennon*, the court in *Kovach* noted that a driver with a BAC of .148% was only "somewhat impaired" and his level of intoxication, coupled with running a stop sign, did not warrant a denial of benefits under the defendant's plan, which hinged on the foreseeability of injury. 587 F.3d at 331.

Defendants rely on two other cases to support their proposition that death is a foreseeable result of driving while intoxicated, citing *Cates v. Metropolitan Life Ins. Co.*, 14 F. Supp. 2d 1024, 1027 (E.D. Tenn. 1996) and *Neslon v. Sun Life Assurance Co. of Canada*, 962 F. Supp. 1010, 1012–13 (W.D. Mich. 1997). These cases are not persuasive. First, *Cates* involved another single-

6

vehicle accident where the driver inexplicably swerved, launched off a bluff, was ejected from the vehicle, and died. *Cates*, 14 F. Supp. 2d at 1025. The driver in *Cates* had a BAC of .18%. *Id.* Similarly, the driver in *Nelson* was killed when he lost control of his vehicle and flipped into the median. While his BAC was only .10%, this too was a single-vehicle accident where, like in *Lennon*, there was no "alternative explanation for the death." 504 F.3d 617, 622. It may be that if a drunk driver singlehandedly catapults himself into the air, his death is non-accidental. But those are not the facts here.

Smith's BAC was .09%, barely over the legal limit in Ohio, and much less than the drivers in *Lennon* and *Cates*. Further, this was not a single-vehicle accident like in *Nelson*. Smith was speeding, as many sober drivers do, but not "at an abnormally high rate of speed . . . ." *Kovach*, 587 F.3d at 331. Defendants failed to account for Smith's low level of intoxication and McCready's negligence in their decision to deny benefits.

At least two other district courts, on similar facts and interpreting the exact same LINA provision at issue here, have found a denial of benefits to be arbitrary and capricious when based solely on laws against drunk driving. *Thies v. Life Ins. Co. of N. Am.*, --- F. Supp. 2d ----, 2011 WL 3624673, at * 9 (W.D. Ky. 2011); *Danouvong ex rel. Estate of Danouvong v. Life Ins. Co. of N. Am.*, 659 F. Supp. 2d 318, 329 (D. Conn. 2009) (calling LINA's denial of benefits a "categorical *per se* rule that could, on its terms, easily be used as a *de facto* exclusion in the guise of an inclusion—and thereby impose on a claimant the burden that is rightfully the insurer's . . . ."). Defendants' reliance on the fact that "every state in the nation has criminalized drunk driving" (Doc. No. 20-1 at 18), conflates criminalization with foreseeability. *See Danouvong ex rel. Estate of Danouvong*, 659 F. Supp. 2d at 329. Defendants have not produced any other evidence to show how Smith's intoxication

7

made his death foreseeable. Defendants' determination that Smith's death was not covered under the Plan was unreasonable.

**Alcohol Exclusion**

In the cases cited above, the policies did not contain alcohol exclusions. *See, e.g.*, *Kovach*, 587 F.3d at 336; *Thies*, 2011 WL 3624673, at * 11. *Kovach* even noted the defendant "could have easily added an exclusion in the Plan for driving while intoxicated if it had wished to do so, but it did not." 587 F.3d at 336. The policy here did have such an exclusion, and this Court finds this exclusion applies. Defendants' denial of benefits on this ground was appropriate.

The Plan excludes from coverage any death that "directly or indirectly, in whole or in part, is caused by or results from . . . operating any type of vehicle under the influence of alcohol . . . ." (Doc. No. 20-1 at 17). Defendants stated in the denial letter this exclusion applied because "Mr. Smith's blood alcohol level was at a level greater than the legal limit in the State of Ohio" (Doc. No. 20-1 at 18), and later clarified their position in the Denial of Appeal:

> Having reviewed the available record, indications are that Mr. Smith was intoxicated and as a result of this intoxication his reactions were slow and this directly or indirectly, in whole or in part contributed to his death.
> (Doc. No. 20-1 at 6).

Plaintiff objects to this determination on three grounds: (1) it ignores the plain meaning of the contract language and the intent of the parties; (2) the record lacks any evidence showing Smith's intoxication caused or contributed to the accident; and (3) the Supplementary Death Certificate indicates alcohol did not cause the accident (Doc. No. 14 at 10–14). Defendants counter that their plain meaning interpretation of the contract is correct and the record supports the denial of benefits under the Common Exclusion (Doc. No. 16 at 2–5).

Neither party offers a single case to support their respective positions.

8

### *Plain Meaning of the Alcohol Exclusion*

Courts review terms in insurance plans "as it would any other contract claim, by looking to the terms of the plan and other manifestation of the parties' intent." *Firestone Tire & Rubber Co.*, 489 U.S. at 112–13. Accordingly, this Court reviews the alcohol exclusion according to its plain meaning and in its entirety.

Alcohol exclusions generally take two forms. The first is an absolute bar to recovery if death or injury occurs while legally intoxicated regardless of causation. Under such provisions, the court's analysis begins and ends with whether the covered person was intoxicated at the time of death. *See Chmiel v. JC Penney Life Ins. Co.*, 158 F.3d 966 (7th Cir. 1998). The second form requires some showing of causation. *Loan v. Prudential Ins. Co. of Am.*, 2010 WL 960336, at *4 (6th Cir. 2010). In these types of exclusions, the insurance provider has the burden to establish the causal link between the intoxication and the injury. *Id.*

The exclusion in this Plan clearly requires causation. Mere reference to Smith's intoxication, a fact not in dispute, is not enough. Plaintiff contends Defendants have not proved intoxication caused Smith's death. Specifically, Plaintiff focuses this Court on the phrase "caused by or results from" in the exclusion:

> Using the plain meaning standard for the term "cause" requires Defendants to establish that Mr. Smith's operation of a motorcycle while under the influence of alcohol was the reason for his death. Using the plain meaning standard for the term "result" requires Defendants to establish that Mr. Smith's death arose as a consequence of operating his motorcycle while under the influence of alcohol.
> (Doc. No. 14 at 11).

If the Exclusion only said, "deny benefits when death is 'caused by' intoxication," then Plaintiff's argument would have merit. But Plaintiff takes the phrase out of context. The plain meaning of the entire exclusion only requires that death "*in whole or in part*, is caused by or results

9

from . . . . operating any type of vehicle under the influence of alcohol . . . ." (Doc. No. 20-1 at 17) (emphasis added). *De minimis* causation is enough.

Interpreting similar language, other district courts have reached the same conclusion. *Cornish v. U.S. Life Ins. Co. of the City of New York*, 2009 WL 3231351, at *9 (W.D. Ky. 2009) ("[S]o long as the intoxication of the deceased is shown to have played any role in bringing about . . . death, the causal requirement will be satisfied."); *Giangreco v. U.S. Life Ins. Co.*, 168 F. Supp. 2d 417, 422 (E.D. Pa. 2001) (when alcohol "plays any role in causing a loss, that loss is not covered."). Defendants' exclusion is unambiguous. Read in its entirety and given its plain meaning, the exclusion reads: if intoxication causes in part or results in death, then no benefits will be paid. As explained below, the record shows Smith was intoxicated and his intoxication, in part, caused his death.

### *The Record Evidence*

Plaintiff's next objection is, "[t]he administrative record lacks any evidence that Mr. Smith's intoxication caused the accident that resulted in his death" (Doc. No. 14 at 11–12). Accordingly, Plaintiff argues the decision to deny benefits was arbitrary and capricious. This characterization of the record is simply wrong.

First, state troopers immediately suspected Smith had been impaired (Doc. No. 14-3 at 2). Second, the accident report indicates Smith did not attempt to brake before the collision (Doc. No. 14-3 at 11). Third, a medical certificate lists Smith's 0.9% BAC as a "Significant Condition" contributing to death (Doc. No. 20-1 at 44). Finally, Trooper Scherley reported Smith's intoxication "definitely . . . would have slowed down his reaction time" (Doc. No. 14-4 at 1).

Plaintiff notes the "traffic crash report indicated that the cause of the crash was a result of a motorist's failure to yield," and "Smith's blood-alcohol content was only .01% above the legal limit

. . . ." (Doc. No. 14 at 12). True, but the report does not exclude Smith's intoxication as a cause either.

Plaintiff also attacks Defendants' brief interview of Trooper Scherley because it was limited to a single question, "Was alcohol a factor in the crash?" (Doc. No. 14 at 13). That however is a critical question, and if Plaintiff had wanted to obtain a further statement from the trooper to clarify his answer or from another expert to offer a different explanation, Plaintiff could have done so.

This analysis is independent of death's foreseeability, and stands solely on the plain language of the exclusion which denies benefits if *de minimis* causation can be shown. Under the arbitrary and capricious standard, Defendants' decision need only be reasonable in light of the evidence in the record. *Shelby County Health Care Corp.*, 203 F.3d at 933. The record contains evidence linking Smith's intoxication to his death. Accordingly, Defendants' decision to deny benefits was reasonable.

### *Supplementary Death Certificate*

Plaintiff's final objection is based on her interpretation of the Supplementary Death Certificate which notes Smith's BAC as a "significant condition contributing to death but not resulting in the underlying cause . . . ." (Doc. No. 20-1 at 44). The Certificate also lists "massive head and chest injuries" as the immediate cause of death (Doc. No. 20-1 at 44). According to Plaintiff, this means "Smith's death was not directly or indirectly caused by and did not result from his intoxication on the night of his fatal collision" (Doc. No. 14 at 14).

This argument borders on the mysterious. Apparently, Plaintiff wants this Court to parse whether it is the fall that kills you, or the sudden stop at the end. However inartfully drafted the Ohio Department of Health's Certificate may be, Smith's intoxication clearly contributed to the "massive head and chest injuries" that ultimately killed him. The Certificate says as much.

11

## CONCLUSION

The standard of review in this case is the most deferential and weighs heavily against Plaintiff. This Court finds, based on the record, Smith's death was covered by the alcohol exclusion and therefore not a Covered Accident under the Plan. Accordingly, Plaintiff's Motion is denied and Defendants' Motion is granted.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

October 13, 2011